The first case is Google v. Valtrus, No. 24-1945. Mr. Speed, when you're ready. Thank you, Your Honor. I'd like to reserve four minutes for a rebuttal, if possible. May it please the Court, Nathan Speed on behalf of the appellant, Google. Before the Board, Google demonstrated that the claims of Valtrus' patent would have been obvious over the prior art Bushy patent. The Board, however, did not address the merits of our argument because they found that the Bushy reference was not prior art. They found that the Valtrus inventors had conceived their invention prior to Mr. Bushy filing his patent application and that they were exercising reasonably continuous diligence in constructively reducing their invention to practice via the filing of their application. The Board's conception and reduction of practice findings are flawed and their decision should be vacated. Just as a housekeeping matter, what in terms of confidentiality are we allowed and maybe shouldn't say in open court? I want to just touch on that. So my understanding is that Valtrus submitted the declaration from the named inventor on the issue of conception under seal. We didn't oppose the motion to seal. I have no objection or we don't take a position on whether or not it is confidential or not, but I think we can probably avoid saying the exact date. Ironically, if I could, I'd like to start with reduction to practice, however, where I don't think that issue comes up. As the parties seeking to affirmably establish an earlier priority date, Valtrus had the burden to demonstrate that its inventors exercised reasonably continuous diligence. And that burden is for me. And that's the only issue, right? We have the date as prior, and you agree that it was eventually reduced to practice. It's just the period between those two, whether there was reasonable diligence. So I dispute whether if the date, the first date is the conception date, there is a dispute on the conception date, but they did, they had an application ready to be filed by July 30th, and Mr. Bushee filed his application a week earlier. So they have to get diligence back to their conception date, which I'll address in a second. But so the period is from July 24th, 2001 to August 27th, 2001. And the manner by which Valtrus attempted to demonstrate. I'll say that again. That's about a month, right? It's about a month, correct. That's the critical period that we're talking about here. But the key is that they have a burden to demonstrate diligence for that entire period, and they need evidence to demonstrate that diligence. And the period you're actually taking issue with is August 8th, 2001 to August 27th, 2001? Correct. That's the main issue that we're taking. What they did in this case to demonstrate diligence is fairly remarkable. They didn't introduce any testimony from a named inventor on the diligence that they took or that their attorneys took during prosecuting the patent. They didn't submit a declaration from the prosecuting attorney. They didn't submit billing records, nothing of that sort. What they did is they went to the publicly available file history and saw some dates there, and they cobbled together this story that the application was done by the 30th, was signed by the inventors up to the 8th, and then was filed sometime after the 8th or it was filed by the 27th. So there's about 11 business days in which we have no idea what happened there. The only evidence in the record is their technical expert's speculation that, in his experience, it's reasonable to take a few weeks to go from an invention disclosure to a ready-to-be-filed application.  Go ahead. Do you have to do something every day? You don't have to do something every day. But what you need to do is have an evidence-based explanation. This is the Monsanto case. It's clear that you need to have an evidence-based explanation for any gaps in that activity. So given 11 days, I mean — It's 11 business days. It's three weeks of the four-week critical period. So it is the bulk of the critical period where we have no evidence as to what was going on. Based on this record, it's equally plausible that the attorneys had it ready to be filed and they just let it sit on their desk for two weeks. And whether that's reasonable or not, there's just no evidence on that issue. And as the party bearing the initial burden of production to introduce evidence, legally sufficient evidence on that issue, they needed to do something other than just point at some dates and say, speculate, that's probably reasonable in the grand scheme of things. Professor, do you at least agree that the purpose of the diligence requirement is to show that the invention was not abandoned or unreasonably delayed? Correct. Unreasonably delayed is the key. And so they needed to introduce evidence that an 11-week gap where their attorney That 11-week. Sorry. Sorry. Apologies. 11 business day gap where their attorneys had the application ready to be filed, but they didn't file it. They needed to provide some type of evidence that that was – that that's reasonable. The D'Amico case from the CCPA that they cited in their response brief and that we talk about in our reply brief, I think it's – it highlights the issue here. In that case, you had an appellant who said, look, we had an application that's basically done, and then we had a final application that was filed. Something clearly happened in that period of time. But the D'Amico – the CCPA case says that the gist of the appellant's argument is just that something had to happen, but they didn't have any evidence of anything actually happening. And because of that, the inferences that could be drawn were wide-ranging. It could be that the attorney was diligent and was working on the application for the entire critical period. It could be that the attorney finished it.  Does the attorney have to work on the period – the application for the entire period, or he just has to work on it? I mean, attorneys have a lot of different things to do, as you know. Right. I think I just – this is all just a rule of reason, right? It is a rule. So if the inventor has all of his or her materials ready to submit to his patent attorney and turns it over to the patent attorney, and the patent attorney takes a couple weeks to put together the application and then submits it to the PTO, why isn't that inherently reasonable? Because the whole point of this is not to document every single hour, as you agreed. It's just to show whether it was abandoned or unreasonably delayed. And so that's the key, is what's – What is a two-week period unreasonable delay? I think, on this record, Your Honor, we have no basis to conclude that that is reasonable or unreasonable. If – I agree, there's a rule where they could get a prosecuting attorney to say, it's not unreasonable to take two weeks. We do a first-in, first-out system, and we have a lot of applications. It takes a little while. It's equally plausible that you could get a patent attorney who says, no, when we have a final application, we file it immediately because delay, it can only hurt our clients. They have the burden of protection to come forward with some evidence. All they did was speculation. We can – as this Court said in In re Maia, we may surmise that they were diligent, but mere surmise is not substantial evidence. Even under the rule of reason, we need substantial evidence. But isn't their argument that they didn't go back and find any of those things because their argument is basically that even if we did nothing, 11 days or three weeks is not unreasonable? But they have no evidence that that – to establish that that would be reasonable, that doing nothing – you need – they need to have some form of evidence with someone with personal knowledge or with practical knowledge of what attorneys do on a day-to-day basis prosecuting patents. They would need to have some evidence that that is reasonable. If it's just a gap, then that would be fatal. In re Maia, In re Mulder had a two-day gap, where you had an application that was ready to be filed, and it took two days for it to be filed, and that was sufficient to find that there was no diligence in that case. Was it based solely on the gap, or were there other facts? There were other facts where there was no – they found no diligence in the pre-critical period time as well. Here, there's no evidence as to what happened in the pre-critical period because the focus was on the gap. I mean, I find it hard to believe that this Court would find a mere two-day delay abandonment. Even without any evidence suggesting what happened during that two-day period. The – I mean, In re Mulder did say focusing on the – even though it's short, it's not sufficient. But I'm going to move on to Conception, if that's okay with Your Honors. On Conception, the board found that the inventors conceived the patent or the invention prior to Mr. Bushey filing his application, and they did so on three pieces of evidence. One is a declaration from the named inventor. Second, it's two documents that the named inventor says that he and only he had access to for the last 20 years on some e-mail server at his University of Toronto account. And then screenshots of metadata that Dr. Tesfaris, the named inventor, he and only he says connects that – that the metadata. So are you familiar with the Global Health Solutions case from our Court? In preparing today, I did see that case, yes. Okay. So what is your response to that case in particular? I think that that case involved a very different type of metadata. It was e-mail metadata, where you had – the Court was referencing the fact that you write an e-mail and send it. There's a to, from, and a time stamp on it, right? So that metadata, in a sense, is independent because you've sent it out to the world. If I wrote you an e-mail, I've sent it. You could verify that you received it. If I sent it at 12 and you received it at 12 to 1, that corroborates my testimony that I sent it at noon. Here we have metadata that's embedded in the document that unless you have the native file, you can't verify that. But did you ask during discovery for any native files? We did not – we did not seek permission from the Board to serve a document request on them. My two responses on that point, though. One is it's their burden. Again, they have a burden of coming forth with legally sufficient evidence if they want to affirmatively establish an earlier priority date. And they produced documents that were completely dependent on their inventor's testimony, which is not legally sufficient under this Court's case law. And second, we did object to the document – to the failure to produce the metadata. That's Appendix 2902 and 2903. We objected on authenticity grounds and best evidence rules. And under the Board's rules, once we made that objection, Vultures had the right, without even seeking any authorization from the Board, to serve on us the native files to moot our objections. So they had the opportunity to provide the metadata, the native files, at the very – when they filed the patent on response and in response to our objections. And they didn't do that. And so I would also point to – I think the parallels between this case and the Apatow case that was highlighted in the briefing is stark. In Apatow, you had an email that was dated. And then it referenced in the body of the email an attachment. The only – and then you had the inventor come in and say, this is the attachment to that email. And that attachment shows my conception. But the only thing attaching – connecting the metadata or the email metadata to that document was his testimony. It's the same thing here. The only thing connecting the metadata screenshots to any of the documents is Dr. Tesparos's testimony. That's insufficient as a matter of law. The Apatow case is – Roberts, but is there a dispute that it's the metadata for the documents? There's no independent evidence that it is the metadata for the documents. We can – No, no. I mean, you can look at the document and the metadata, and if it's – I mean, are you challenging it on the – on – or saying that they've created false metadata? We're – even the most credible inventor has to have their testimony corroborated by independent evidence. And what our – Metadata – if you're saying that WordPerfect or whatever metadata is not independent, I don't think you're going to win that argument with me. So why – as substantial evidence. Right. So if somehow you're suggesting that the metadata they gave you is actually not metadata for the specific document they're talking about, then that's a different question. But that's not the way I understood your argument. The argument is that the metadata that they – the screenshot of metadata, the only thing that tells us, tells the court, that that is for that document, is the inventor's testimony, which makes that metadata – well, I might agree with you that in the abstract, the metadata could be independent. It's – the problem here is that the only person connecting it to the – to the document is the inventor. It's no different than a – But, counsel, during the deposition, you never questioned the authenticity of the metadata, right? We asked him what he – his recollection of events, and he said everything that he was recalling was based on the metadata. We didn't have the native file to cross-examine him on that. So it sounds like the answer to my question is, yes, you never questioned the authenticity of the metadata during the deposition. We did not question the inventor on whether or not he forged it or anything along those lines, Your Honor. You're going to see your rebuttal if you want to say anything. Thank you, Your Honor. Thanks. Mr. Warrick. Good morning, Your Honors. May it please the Court. Bill Warrick on behalf of Boutrous. I'd like to start with the conception issue and just address a few points. One thing that was not mentioned by my friend was that there was a motion to exclude the inventor so far as declaration, as well as the attachments and the metadata that was denied by the Board, and Google did not appeal that in this case. So we would submit that issue as waived in terms of authentication. In terms of the metadata being linked to the documents, if you look in the appendix, appendix 6259 to 6274, you'll see that the metadata has the file names that match the files that are attached to Tsipras's declaration. Tsipras also testified that he did not alter the metadata. And again, there was an opportunity to question him. Moreover, the alleged author of these invention disclosures is, to the best of my knowledge, a current executive-level Google employee. This brings me to a point about burden shifting. This is under the dynamic drinkware burden shifting framework. We had an initial burden of production. On conception, we did that with the Tsipras documents, as well as Dr. Cole, explaining, and this isn't disputed, that the invention disclosure does, in fact, show conception in terms of substance. And then the burden shifted back to Google, ultimately. They could have brought forward their own inventor. They could have brought forward a number of evidence, and they did not do that. Instead, they're relying on attorney speculation and attorney argument. Now, also I'll point out, in denying the motion to exclude, the Board cited a Fourth Circuit case for the proposition that metadata is not a statement of the inventor or declarant. It is computer-generated. And Google's own expert agreed with that. I don't think there's any dispute. Unless Your Honors have questions, I can turn to the diligence issue. Do you want to talk at all about Global Health Solutions? Are you familiar with that case? I will admit, Your Honor, I'm not entirely familiar with the details of that case. But I will say here, there is no evidence of any alteration or malicious intent with regard to the metadata that's at issue. And, again, we think it was linked. It seemed to me that the argument was more along the lines of because the document was created by the inventor, the metadata is along those same lines as the inventor's testimony about his own invention, and therefore it can't corroborate. And the Board rejected that because it found, even though the document itself may not corroborate, the metadata is independently generated by the computer, and that's sufficient. And I think they're trying to say anything created by the inventor, including the corresponding metadata, is not sufficient to corroborate. So I would agree with Your Honor's characterization of what the Board found in terms of Google's arguments. I think they're trying to argue that. The problem, again, is that the Board determined that the metadata is created by the computer. Well, sure. I just, it doesn't seem, I mean, whatever they were arguing today, it didn't seem the focus in the briefs was on the authenticity of the metadata, just that it was legally insufficient to corroborate, and that that's the question we have to decide. And the Board decided that against them. Sure. And I'll point out, Your Honor, they don't cite, Google does not cite any case, any binding authority that says you cannot rely on the metadata. And we would submit that the approach in the PTAB's decision, in the Unified Patents v. FlexiWorld case, is the proper approach. Turning to diligence, if I may, Your Honors are correct. We're talking about 11 business days. And respectfully, I disagree with my friend from Google about this, that there is no evidence. The evidence in the record related to the transmittal, the signature of the oaths, like those, that is evidence. And there's no dispute about certain activities that had to take place. Within those 11 business days, one of those activities is Inventor Sepharis, who was at least living in Canada at the time, had to get his signed oath to the Cooley law firm in California to be filed. And candidly, we don't know how long that took, but we do know it had to take place. We do know it took some time. We know that there were various papers that had to be prepared. Those were at 376 to 378, a check that had to be cut. Various things had to be done. And all of those appeared to have been done by the 24th, which was a Friday. So the time even shrank shorter than that, because on Monday, the 27th of August 2001, we know that the application was, in fact, filed. Now, in terms of diligence, there's a lot of discussion of different cases that have different facts. I think the takeaway for me is that this is just a very fact-specific, case-specific inquiry. And it's worth noting that we're here on substantial evidence review. Google effectively just wants this Court to reweigh the evidence. But to be clear, there is evidence. This all happened in a matter of weeks. And we do have the Cole Declaration. Now, Dr. Cole is not an attorney, but he was someone who at the time, in 2001, was a CTO overseeing a robust patent portfolio, testified he was familiar with how long it typically took for an application to go all the way from a disclosure to actually being filed. And this was within that period. So, again, the burden shifted back to Google. We more than met our burden of production. Google could have itself sought to depose Cooley or other attorneys. It could have presented one of its own prosecution experts. It did not do any of those things. And, Your Honors, respectfully, unless there are any other questions, we'll rest on that. Thank you. Thank you, Your Honors. I'd like to focus on conception. The issue is a legal issue for conception. This Court in Apatow, and it's not an outlier, has made clear that it is well established that when a party seeks to prove conception through an inventor's testimony, the party must proffer evidence in addition to the inventor's own statements and documents corroborating the inventor's testimony. The Procter & Gamble case said the same thing with regards to an unwitnessed lab notebook that the inventor has. These documents and the metadata, it's no different than if Dr. Tesparas had ran up to his attic and came down with an unwitnessed lab notebook and said, oh. Wasn't it entirely different? Because there's an independent metadata that's generated by the computer, not by the inventor himself. Let me ask you this, hypothetically. Instead of an unsigned, unwitnessed lab notebook, you had a lab notebook that has a signature by his office mate saying this was created on this date. Would that be, then, sufficient? That would be because you have an independent witness for that. So you're suggesting that it has to somehow be a person instead of a lab notebook? A computer program? No, I'm not suggesting that at all. What I'm suggesting, Your Honor, is that this is the metadata and this is a document that they produced. Connecting this metadata to this document, you have to rely on the inventor's  If they produced the native file ---- Who says the file names are on the document? There's no ---- I mean, Your Honor, I respect this, but there's no file name on the actual Word document. There's just an inventor's testimony that this metadata says patents, spelled incorrectly at the top, and that that document is this document. That's the problem, is that it's all dependent on the expert. Are you challenging? I mean, this is the problem, is I didn't understand your argument to be that that metadata document wasn't the document that goes with the actual document. Your challenge is that that's legally insufficient. That is my position. Well, if that's ---- if that document, metadata document, goes to that document, which you seem not to be challenging, then it is sufficient. If it was ---- if the connection between the metadata and the document was a third party, like your hypothetical supervisor who signed it, I would agree. But you don't have that here. It's that ---- the Colcroft case was the exact same thing. Colcroft, there were exhibits A through H that were produced. The only evidence as to the date of those exhibits was a declaration from the inventor who said, I looked at the metadata. That was insufficient. That's Colcroft, Apatory. These are cases ---- this is all inventor-dependent testimony that connects the documents. It's just legally insufficient to sustain. Unless there's any more hypotheticals or questions, I'm happy to ask. Thank you, Your Honors. Thank you. The case is submitted.